Charles Kinyon, as Administrator, etc., and Others, Appellants, v. Albert Kinyon, Respondent.

*Assignment of an expectancy by an heir — release by the heir to the ancestor — enforcement in equity.*

The mere expectancy of an heir to his ancestor's estate may be assigned, and such an assignment will be enforced in equity after the death of the ancestor if made *bona fide* and for a valuable consideration.

The fact that such an assignment or release is made to the ancestor himself, and not to any person capable of taking after his death, is not conclusive against the effect of the instrument.

Appeal by the plaintiffs, Charles Kinyon, as administrator, etc., of John Kinyon, deceased, and Charles Kinyon, John Kinyon, Jr., and George M. Kinyon, from a judgment of the Supreme Court, entered in the office of the clerk of Niagara county on the 28th day of March, 1892, upon the findings and decision of the court rendered after a trial by the court at the Niagara Special Term.

*D. Millar*, for the appellants.

*G. D. Judson*, for the respondent.

Dwight, P. J.:

The four individual parties to the action are the four sons and sole heirs at law and next of kin of John Kinyon, Sr., deceased, and one of the brothers is also joined as plaintiff in his representative capacity, as administrator of his father's estate. The complaint alleged the execution and delivery by the father in his lifetime, to the defendant, of a deed of a farm of ninety-one acres of land "as an advancement," and the execution and delivery thereupon and in consideration thereof, by the defendant to his father, of an instru-

ment in writing, under seal, which, after stating the fact of the deed above mentioned, proceeded in the following terms: "Now, therefore, in consideration of such conveyance being made and given to me as aforesaid, I do hereby renounce, release, give up and set over unto my said father all my right, title, claim, interest and demand whatsoever in and to all and every part, parcel or share in and to his real and personal estate which I may or will have at or upon his death, in expectancy, by reason of being a devisee or legatee under any will he has made, or by reason of being one of his next of kin, excepting the lands hereinabove referred to as conveyed to me by him this day."

The complaint further alleges that in proceedings instituted in the Surrogate's Court of the proper county by the plaintiff Charles Kinyon, as administrator of his father's estate, for the settlement of his account as such administrator, he set up the execution and delivery, by the intestate, of the deed above mentioned, to the defendant, and the execution and delivery of the release aforesaid in consideration thereof, and alleged that by such release the defendant did renounce, release and give up all his right, title and interest in and to the estate of the deceased and his right to share therein, and that by reason thereof he was not entitled to any share of or interest in the distribution of said estate; "that thereupon, notwithstanding the said release, the said defendant was permitted to intervene upon said accounting, and he filed an answer contesting said account in so far only as the same related to the release aforesaid, and, among other things, therein alleged that the said alleged release was void and of no legal force and effect; * * * and that the said Albert Kinyon was entitled to an equal distributive share of said decedent's estate, in the one-fourth part thereof," and that he asked that a decree be made accordingly.

The complaint further alleges that when the issues thus joined came up to be heard by the surrogate, he held and decided that he had no jurisdiction to determine the validity or invalidity of the release, and that the account of the administrator could not be judicially settled, nor any part of the estate distributed, until the question of the validity or invalidity of the release should be determined in a proper tribunal, and that the surrogate thereupon made and entered an order to that effect and adjourned the accounting,

which the plaintiffs are informed and believe will be further adjourned or held open pending the determination of this action.

On the trial of this action evidence *aliunde* the deed and agreement was given by the plaintiffs, under objection of the defendant, tending to show that at the time of the execution of the papers it was understood and agreed between the deceased and the defendant that the effect of the transaction as a whole was to bar and prevent him from ever thereafter claiming any share of or interest in his father's estate. It was also shown that the father had before that time deeded farms to two of his sons, and that he did on this occasion deed a farm to the other of his sons aside from the defendant; and that at the same time there was proposed, and some steps were taken towards, a division then and there of the certain moneys and securities, which was all the property the father then had undisposed of, between the three brothers other than the defendant, but that on the father manifesting reluctance to strip himself entirely of the last of his possessions, that final division of the personal property was abandoned. The result was that on the death of the father, not long after, there was of his estate about the sum of $3,000 in personal property to be distributed among such of his sons as were entitled thereto, and it was upon the return of a citation for the settlement of the accounts of the administrator, with a view to such distribution, that the controversy arose before the surrogate which has resulted in this action.

Assuming, what is not questioned by any one of the parties hereto, that this action was properly brought in aid of the proceedings before the surrogate, the question here seems to us to be what was properly the scope of the action, and was the case considered and disposed of below in accordance therewith?

The learned judge at Special Term seems to have restricted the scope of the action to a determination of the validity and effect as a transfer of the release or agreement executed by the defendant. In the opinion, which we find in the case, he intimates that no other question was presented by the pleadings and that no other was tried before him. He seems disposed, moreover, in determining this question, to isolate the instrument from its surroundings and construe it by its own terms as standing alone. Treated thus, he finds the instrument to be an assignment or transfer of a mere expectancy,

not coupled with any present interest, and holds it to be absolutely void in law, upon the authority of such cases as *Jackson* v. *Wright* (14 Johns. 193); *Jackson* v. *Hubble* (1 Cow. 613); *Miller* v. *Emans* (19 N. Y. 384), and it was upon this as a controlling conclusion of law that the case was disposed of, not merely by a dismissal of the complaint, but by an affirmative adjudication that the defendant was entitled to a full distributive share of the personal estate of his father " as one of the next of kin, the same as if said instrument had not been executed."

This conclusion ignores any equitable effect which might be given to the instrument in view of the other circumstances of the transaction, and, especially, rejects it as evidence of an advancement made to the defendant in full of his prospective interest in his father's estate. These latter were, we think, aspects of the case which were fairly presented both by the pleadings and by the proofs, to which brief reference has been made above.

That the mere expectancy of an heir to his ancestor's estate may be assigned, and that such an assignment will be enforced in equity after the death of the ancestor, if made *bona fide* and for a valuable consideration, admits of no doubt. (*Quarles* v. *Quarles*, 4 Mass. 680; *Kenney* v. *Tucker*, 8 id. 143; *Power's Appeal*, 63 Penn. St. 443; *Stover* v. *Eycleshimer*, 46 Barb. 84; 3 Keyes, 620.) And that the assignment or release in this case was made to the ancestor himself, and not to any person capable of taking after his death, is not conclusive against the effect of the instrument. The case of *Power's Appeal* (*supra*) was one in which sons had received advancements from their father and executed releases to him in full of their shares of his estate; and the court, by READ, J., said: "An heir or an expectant devisee or legatee may, in the lifetime of the intestate or testate, in equity sell or assign his expectant or contingent interest, whatever it may turn out to be upon the death of the person from whom it may come, which contract, if made upon a valuable consideration, a court of equity will enforce. If so, there can be no reason why a father should not make such a contract with a son, which should entirely bar all his claim as an heir to any part of his parent's estate."

So in this case before us we think it was clearly within the scope of the action as presented, both by the pleadings and the proof, to

determine whether such a contract was made between the deceased and the defendant which ought to be enforced in equity. This question was also, we think, fairly presented by the plaintiff's requests to find, and without intimating any opinion as to what the finding in that respect should have been, we are clearly of the opinion that the court erred in refusing to find thereon on the ground that the question was not before the court.

For the error here indicated the judgment should be reversed and a new trial granted.

LEWIS, HAIGHT and BRADLEY, JJ., concurred.

Judgment appealed from reversed and a new trial granted, costs to abide the final award of costs.

