(6 Misc. Rep. 584.)

### KINYON et al. v. KINYON.

(Supreme Court, Special Term, Niagara County.    February, 1894.)

CONTRACTS—ACCEPTANCE OF BENEFITS.

A father conveyed to his son pursuant to a written agreement reciting that the son thereby released all his right to his father's estate. *Held,* that the deed and the agreement were parts of the same transaction, and the son could not retain the land conveyed, and repudiate the release of his interest in the estate.

Action by Charles Kinyon individually and Charles Kinyon as administrator of John J. Kinyon, deceased, John Kinyon, Jr., and George Kinyon, against Albert Kinyon, to enforce an agreement of defendant releasing all claim to the property of decedent, who was his father.    Judgment for plaintiffs.

For former report, see 25 N. Y. Supp. 225.

C. W. Laskey, (David Miller, of counsel,) for plaintiffs.

George D. Judson, for defendant.

WARD, J.    On and prior to the 4th day of April, 1885, John Kinyon, a farmer in Niagara county, and owning several farms, conveyed to his four sons, the parties to this action, all of his real estate, a portion to each son.    He conveyed to his son Albert Kinyon (the defendant) what was known as the "Home Farm," situate in the town of Ridgeway, Orleans county, consisting of about 91 acres of land.    This conveyance was made at the house of John Kinyon, Jr., where the father and all the parties to this action had assembled; and the father stated to the defendant, in the presence of the others, that Albert had had $2,000 more than any of the other children, and that, if he deeded him this farm, he should require of him an agreement not to make any claim to the other property of the father, and to release all claims to such property.    This the defendant agreed to do, and then and there, and before the delivery of the deed to him, executed and acknowledged an instrument in writing, dated on the 4th day of April, 1885, which, after reciting the deed from his father, and describing briefly the property conveyed, concluded with this statement:

"Now, therefore, in consideration of such conveyance being made and given to me as aforesaid, I do hereby renounce, release, give up, and set over unto my said father all my right, title, claim, interest, and demand whatsoever in and to all and every part, parcel, or share in and to his real and personal estate which I may or will have at or upon his death in expectancy, by reason of being a devisee or legatee under any will he has made, or may hereafter make, or by reason of being one of his next of kin; accepting the land hereinabove referred to as conveyed to me by him, this day."

Thereupon the deed was duly delivered by the father to the defendant, and this instrument in writing delivered by the defendant to the father, and the defendant had the benefit of the use of the real estate thus conveyed until February 18, 1888, when the defendant and his wife conveyed the premises to their son Lewis.    The deed to the defendant was recorded in Niagara county clerk's office.    On the 19th day of December, 1886, the father, John Kinyon,

departed this life, intestate. The plaintiff Charles Kinyon was ap-
pointed administrator of the estate of his father on the 28th of De-
cember, 1886; and on the 17th of December, 1888, he filed a petition
in the surrogate's office of Niagara county for a judicial settlement
of his accounts as such administrator, and, upon citation being
issued and returned, the parties herein appeared before the sur-
rogate, and the question arose whether the defendant should have
a distributive share of the personal property of the deceased, which
was about $3,400, or whether he was barred from such share by
the instrument executed on the 4th of April, as aforesaid; the de-
fendant claiming a share, and that the instrument was void, and the
administrator claiming that it was binding. The surrogate de-
clined to decide the question for want of jurisdiction, and this action
was brought by the plaintiffs.

The complaint set forth the facts substantially as above stated,
and demanded as a relief that the defendant be adjudged to have
been fully paid his share in the estate of the deceased, and that the
instrument given by him was binding and effectual as against him
and any share or interest that he might claim in the estate of the
deceased, and barred him from the same, and for other relief. The
defendant answered, alleging various matters as a defense, among
which were that, in equity, the farm that had been sold to the de-
fendant, belonged to him, and the father had no right to impose
as a condition of this conveyance that the defendant execute the
instrument which he did, and that the same was void for want of
consideration, and that the father had been induced by the plain-
tiff to impose such a condition upon the defendant through fraud,
collusion, and undue influence, and that the instrument was void,
and could not be enforced, and contained an admission, in effect,
that the defendant had received the farm upon the arrangement
set forth in the complaint, and contained no offer to return the
property received by the arrangement, or to rescind the contract
in any manner, and there is no question of damages in the case.
On the trial, the defendant took the position, through his counsel,
that he did not want to rescind the transaction, and return what
he had received, but that he proposed to keep the farm, and stand
upon the ground that the release was void, for the several reasons
alleged in the answer, and could not be enforced. The cause was
first tried at the Niagara special term in November, 1891, and the
learned judge who tried the cause held that the said instrument
was void, and of no force or effect, and that the defendant, Kinyon,
was entitled to a distributive share of the said personal estate.
Judgment was perfected upon that decision, and the plaintiffs duly
appealed to the general term; and in October last the general
term of this department handed down a decision in the case, re-
versing the judgment of the special term, and directing a new trial,
with an opinion, which is reported in 25 N. Y. Supp., at page 225,
and this is a new trial of the action. By a reference to this opin-
ion, it will be seen that the court ordered a new trial, for the pur-
pose of disposing of certain equitable questions, which are within
the scope of the case.

The statement above made would seem sufficient to dispose of the questions involved. The defendant has the fruit of the transaction, and refuses to surrender it. He, in effect, says: "True, the condition upon which I obtained this farm was that I was never to assert a claim to the personal property, but my contract is void, and I can be heard in a court of equity to repudiate the means by which I obtained this property, and still keep it." This cannot be done. In equity, if one accepts the benefits of a transaction, he must submit to the burdens by which those benefits were secured. He will not be permitted to say that he is not bound by those burdens. He is estopped from so doing. He is estopped because it would be bad faith in him, and would work a fraud upon the other party. If he wishes to say that he has been defrauded or overreached in the transaction, and claim to be relieved from it, he must ask that the whole transaction be set aside, returning what he has received, or at least offering to do so, provided that it is in his power so to do. Then equity will listen to his claim, and, if he is wronged, do him justice; but it will not permit him to assert that a fraud has been perpetrated upon himself, in order to avoid the performance of his own contract, and still retain all the fruits of that contract. Havens v. Sackett, 15 N. Y. 365, 369; Gould v. Bank, 99 N. Y. 333, 2 N. E. 16; Id., 86 N. Y. 79; Kibbe v. Bowen, 50 N. Y. Super. Ct. 422; Duff v. Hutchinson, (Sup.) 10 N. Y. Supp. 857; In re Peaslee's Will, reported in 73 Hun, 113, 25 N. Y. Supp. 940. In the last case the court gives a clear and exhaustive review of the cases upon the subject, and uses this language:

"It is a well-settled proposition in law, as well as in equity, that he who accepts and retains a benefit under an instrument, whether a deed, will, or other writing, is held to have adopted the whole, and to have renounced every right inconsistent with it."

And see Chipman v. Montgomery, 63 N. Y. 234, and Mills v. Hoffman, 92 N. Y. 181, "Estoppel;" Parker v. McCluer, reported in 5 Abb. Pr. (U. S.) 97, "Estoppel," at page 108. In this last case a verbal agreement between the father and the son, that the son should have a certain piece of land in full for his share as heir of the estate of his father, was sustained as an advancement, and the court held that the other heirs of the father would be estopped from asserting to the contrary.

The general term, in this case, held, in effect, that the instrument executed by the defendant is valid in equity, and could be enforced, as an assignment or release, although made to the ancestor himself, and not to any person capable of taking after his death. 25 N. Y. Supp. 228, supra. This view is also well supported by the authorities cited by the court. The father had the legal title to this land, and claimed the right to dispose of it, and proposed to deed it to the defendant, if he would renounce all claims upon the other property of the father. The defendant consented to this, and the papers were executed and exchanged. The deed and release constituted but one paper in equity, and was a part of the same transaction, and cannot be disconnected, and must stand or fall together. Counsel for

the defendant claims that the deed and contract were separate instruments, and not dependent upon each other, and the contract, being void, should be disregarded, as he claims that the proof on this trial shows, and that, although the father had the legal title to this farm, it belonged in equity to the defendant, and, as that was so, the father could not impose, as a condition to deeding him the property, the release of all claims to the personal property, and cites Vanderbilt v. Schreyer, 91 N. Y. 392, and other cases. The difficulty with this position is that the father did not concede that the son was entitled to a conveyance as a matter of right, but, in effect, he denied that that was so, and imposed a condition upon the defendant, to which he agreed. The defendant thus conceded the right of the father to impose this condition, and it is not, therefore, a case where the party concededly had no right to impose a condition, as appeared in the last case cited. Whether the defendant had a right to this land that a court of equity could ripen into a title was a question of fact not then decided. The most that the defendant can claim in this regard is that it was a disputed and unsettled matter between the parties, which was disposed of by the transaction of the 4th of April, and the court, in Vanderbilt v. Schreyer, 91 N. Y., at page 400, concedes that in such a case the rule there laid down has no application.

The defendant also claims that the plaintiffs, by fraudulent contrivances and undue influence, induced the father to impose this condition upon him; and also that he was induced to accept the deed, and execute the release, through the advice of the plaintiffs Charles and George that he sign whatever papers the father required, and have no controversy with him. The defendant fully understood the contents and effect of the papers at the time they were executed, and there was no misapprehension on his part as to what he was doing, and he has again to meet the difficulty before suggested, that he does not propose to rescind the transaction, but to affirm it. Indeed, it appears that on the 18th of February, 1888, 14 months after the death of the father, when it is reasonably supposed that he must have been fully informed of any fraud that had been practiced upon his father or upon himself, he conveyed the farm to another, and actually put it out of his power to restore what he had received, and to disaffirm the transaction.

The question as to whether the defendant had an advancement from his father by means of this transaction is before us. The general term reached the conclusion that this was one of the questions which the trial court should consider, and I have accordingly given it consideration. It appears from the whole evidence that the father did intend that the property conveyed to the defendant should be in full of any share of the father's property to which the defendant would be entitled upon his decease. I do not deem it necessary to go into an analysis of the evidence, or the taking of an exact account of the distribution of the property of the father among the sons up to the time of his death. It is enough for our purpose that the father and the defendant, in effect, contracted, as between themselves, that the farm received by the defendant

should be received by the defendant as his full share of the property of the deceased, and that there was sufficient consideration to support that arrangement in equity. Indeed, in view of the conclusions before reached, it is hardly necessary to consider the question of advancement at all. It was conceded upon the trial that the father, although of advanced years, was capable of transacting business, and understood the nature and quality of his acts; and the evidence showed that he comprehended the kind and extent of his property, and the claims of his children upon him. There was an utter failure of evidence to show that the father was coerced or improperly induced to enter into the arrangement in question by the plaintiffs, or any of them. Whether, if that were the fact, it would avail the defendant here in any event, is unnecessary to decide. It is sufficient to say that it was not proved. Again, the evidence tends to show that this was a family arrangement. The father and all the children were present, and acquiesced in the transaction of April 4th. Such arrangements are frequently sustained by a court of equity. Chit. Pr. 67; Turn. Ch. Pr. 13.

The remaining question is what relief, if any, the plaintiffs are entitled to in this action. The surrogate's court of Niagara county awaits the decision of this court as to the effect of this instrument before making distribution of the personal property of the deceased. It follows from the conclusions above reached: First, that the deed and contract, as between the parties to them, are to be construed and taken together as constituting one transaction; second, that the defendant is estopped from questioning the validity of the instrument given by him, and from refusing to carry out its provisions, and is estopped from asserting any rights, claim, or interest in the personal property of the deceased; third, that, in equity, the instrument is valid and effectual for the purpose for which it was executed, and is binding upon the defendant; fourth, that the conveyance of the farm by the father to the defendant was intended by the father to be and did constitute an advancement to the defendant of his share of the father's property; fifth, that the plaintiffs are entitled to judgment accordingly, with costs of this action; the costs, however, to be paid out of the personal property of the deceased.